UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

World Wide Pictures, Inc.,                          Civil No. 05-404 (DWF/SRN)

          Plaintiff,

v.                                                **MEMORANDUM OPINION**
                                                 **OPINION AND ORDER**

Dean River Productions, Inc.,
John Schmidt, David Ross, and
John Sheperd,

          Defendants.

---

Lora Esch Mitchell, Esq., and James R. Mayer, Esq., Fredrikson & Byron, PA, counsel for Plaintiff.

Daniel R. Shulman, Esq., and Dean C. Eyler, Esq., Gray Play Mooty Mooty & Bennett, PA, counsel for Defendants.

---

## Introduction

The above-entitled matter came before the undersigned United States District Judge on November 10, 2005, pursuant to a Motion to Dismiss brought by Defendants Dean River Productions, Inc. ("Dean River") and John Schmidt.[1] In its Complaint, Plaintiff World Wide Pictures, Inc. ("World Wide") asserts five counts: (1) breach of contract; (2) fraud; (3) breach of the covenant of good faith and fair dealing; (4) unjust enrichment (against Dean River); and (5) unjust enrichment (against Schmidt, David Ross, and John Sheperd). For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part.

---

[1] Initially, the Motion to Dismiss was also brought by Defendants David Ross and John Sheperd. However, at oral argument on this matter, Plaintiff voluntarily agreed to dismiss its claims against Ross and Sheperd. (R. Tr. at 27.)

**Background**

This case arises out of the termination of Dean River's contract to produce a film, *Last Flight Out*, for World Wide. World Wide is a Maryland nonprofit corporation with its current headquarters in Charlotte, North Carolina. During the course of interactions between World Wide and Dean River, World Wide was headquartered in Minneapolis, Minnesota. Dean River is a California movie production corporation based in Culver City, California. Schmidt is the founder and president of Dean River.

The business relationship between World Wide and Dean River has existed for approximately seven years. Prior to the contract at issue here, Dean River produced four films for World Wide. On March 20, 2002, World Wide and Dean River entered into a contract under which Dean River would produce *Last Flight Out* (the "May 20, 2002 Contract"). *Last Flight Out* was to be filmed in Puerto Rico. The May 20, 2002 Contract was drafted in Minnesota by World Wide and was governed by Minnesota law. Schmidt signed the contract on behalf of Dean River and sent it to Minneapolis where the contract was executed by World Wide. The contract called for Dean River to provide a shooting script, budgets, and invoices to World Wide in Minneapolis for approval. World Wide asserts that the contract contemplated continuous collaboration on the project between World Wide and Dean River.

Over the course of performance of the May 20, 2002 Contract, Schmidt and Ross made a number of telephone calls and facsimile transmissions to World Wide in Minnesota. In addition, Dean River mailed invoices, budgets, and other correspondence to World Wide in Minnesota. On approximately July 24, 2002, Shepherd and Michael Sajbel, agents of Dean River, traveled to Minneapolis to discuss matters related to the contract. In addition, on August 3, 2002, Schmidt, Ross, and Shepherd met with World Wide representatives in Minneapolis to discuss the status of *Last Flight Out*.

On August 8, 2002, World Wide terminated the contract with Dean River. At that time, Dean River had been paid approximately one-half of the money that it was to be paid pursuant to the May 20, 2002 Contract and Dean River was about to begin shooting the film. Dean River responded with a letter sent to World Wide in Minneapolis which stated that Dean River would "end all financial commitments as good stewards of God's resources and in the best financial interest of World Wide Pictures, Inc." (Complaint at ¶ 37.)

World Wide's Complaint asserts that after Dean River and Schmidt assured World Wide that they would act in World Wide's interest, Schmidt improperly used World Wide monies that had already been paid on the contract to pay off personal debts.

It is undisputed that Dean River does not have any employees, property, offices, phone listings, agents for service of process, or mailing address in Minnesota. Dean River has no assets, bank accounts, or other holdings located in Minnesota.

Similarly, Schmidt does not own or lease any property in Minnesota, nor does he have any assets, bank accounts, or other holdings in the state. Defendants assert that any infrequent contacts that Schmidt had with any person in Minnesota were in his capacity as an employee of Dean River.

## Discussion

**I.      Personal Jurisdiction**

Defendants' Motion to Dismiss asserts that Defendants have no contacts with this forum to confer personal jurisdiction over them.

When personal jurisdiction has been challenged, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). However, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only

3

make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Protec Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)). When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; the court may inquire, by affidavits or otherwise, into the facts as they exist. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Digi-Tel*, 89 F.3d at 522 (citing *Northrup King*, 51 F.3d at 1387). However, because the Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Handerson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). Therefore, when analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate

4

being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's contacts must be more than "random," "fortuitous," or "attenuated," *Digi-tel*, 89 F.3d at 522 (quoting *Burger King*, 471 U.S. at 475). Instead, the contacts must result from the actions of the defendant itself to create a "substantial connection" with the forum state. *Id.*; *see also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223) (1957)).

In accordance with the basic principles of federal due process, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minnesota Mining and Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995).

The third factor distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523, n.4 (citing *Wessels*, 65 F.3d at 1432, n.4). Constitutional law distinguishes between "general" and "specific" jurisdiction cases. *Valspar*, 495 N.W.2d at 411. In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v.*

*Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 416, 418–19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction requires that a defendant has "purposely directed" its activities at residents of the forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

World Wide does not assert that general jurisdiction exists over Defendants, and the facts before the Court do not support a finding of general jurisdiction. Because World Wide focuses on the specific transactions at issue and the alleged collaborative venture entered into between World Wide and Dean River, the Court will determine whether specific jurisdiction exists over Defendants.

In support of its proposition that personal jurisdiction exists, World Wide points to the seven-year relationship between World Wide and Dean River. In addition, World Wide asserts that all production contracts for the four films that Dean River previously produced, as well as the contract for *Last Flight Out* that is at issue here, were drafted and executed in Minneapolis and contained Minnesota choice of law provisions. World Wide also points to the two physical visits that Dean River's agents made to Minnesota to discuss the project, as well as the telephone calls, facsimile transmissions, and mailed invoices and other correspondence made to World Wide in Minneapolis. Finally, World Wide suggests that the Court should find that personal jurisdiction exists because of the creative, collaborative process that World Wide entered into with Dean River.

Considering the contacts in the aggregate, the Court finds that the nature and the quality of Dean River's and Schmidt's contacts with this forum are sufficient to confer jurisdiction. Although the heart of the contract—the making of *Last Flight Out*—was to be performed outside of Minnesota, the contacts between the parties leading up to the project and the collaboration

6

associated with a project of this nature created a substantial connection with Minnesota such that Dean River and Schmidt could reasonably expect being haled into court here. Plaintiffs have made a prima facie showing of personal jurisdiction.

## II.     Fraud

In deciding a motion to dismiss, the Court must assume all facts in the complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the complaint. *Id.* The complaint Amust contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.@ *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002).

Defendants have moved to dismiss World Wide's fraud claim, asserting that World Wide's allegations of fraud are without merit as a matter of law. World Wide's fraud claim is based on Schmidt's assurance that Dean River would "conclude all work in a spirit of grace and cooperation, end all financial commitments as good stewards of God's resources and in the best financial interest of World Wide Pictures, Inc." (Complaint at ¶ 37.) World Wide asserts that at the time it made the assertion, Dean River had no intention of acting in World Wide's best financial interest. (*Id*. at ¶ 38.)

The Court finds that Dean River's statement is not actionable. Dean River's statement does not rise to the level of specificity required of a fraud claim. *Martens v. Minnesota Mining & Mfg. Co*., 616 N.W.2d 732, 747 (Minn. 2000). The Court agrees with Dean River that the allegedly fraudulent statement merely reflects Dean River's attempt to be cooperative following the termination of the contract. However, the Court sees no logical manner in which this

statement could result in any reliance or damages to World Wide. For these reasons, World Wide's fraud claim is dismissed.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss (Doc. No. 7) is **DENIED IN PART** and **GRANTED IN PART**, as follows:

    a. Defendants' Motion to Dismiss for lack of personal jurisdiction is **DENIED**; and

    b. Defendants' Motion to Dismiss Plaintiff's fraud claim is **GRANTED**. Count Two of the Complaint is **DISMISSED WITH PREJUDICE**.

Dated: January 19, 2006                            s/Donovan W. Frank
                                                          DONOVAN W. FRANK
                                                          Judge of United States District Court